UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDGARDO EUDORO EVERETH OCAMPO,

    Petitioner,

                                   Case No. 8:13-CV-1345-T-15MAP
                                             8:10-CR-100-T-30MAP
UNITED STATES OF AMERICA,

    Respondent.
_____/

O R D E R

    This cause comes on for consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1; CR-D-324), Memorandum of Law (Cv-D-3), Affidavit (Cr-D-2), the Government's response in opposition (Cv-D-9), Petitioner's reply (Cv-D-11), and the Government's supplemental response (Cv-D-12).

    On March 10, 2010, Petitioner and four co-defendants were charged in an Indictment with conspiracy to possess with the intent to distribute cocaine, while being onboard a vessel subject to the jurisdiction of the United States, and possessing with intent to distribute five kilograms of more of cocaine while on a vessel subject to the jurisdiction of the United States in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a)(1) and 70506(a) and (b), 18 U.S.C. § 2 and 21 U.S.C. § 960(b)(1)(B)(ii).  Petitioner and three of his co-defendants proceeded to trial, and on July 22, 2010, a jury found them guilty

of both counts of the Indictment. On October 26, 2010, the Court sentenced Petitioner to a term of imprisonment of 188 months. Petitioner appealed. On September 21, 2012, the Eleventh Circuit affirmed Petitioner's conviction. United States v. Mendez, 490 Fed. Appx. 287 (11th Cir. 2012) (per curiam).

Petitioner timely filed his § 2255 motion claiming that he is illegally incarcerated because the Court lacked subject matter jurisdiction over the offenses as he was within the territorial waters of Panama at the time of the interdiction. He further claims that the MDLEA is unconstitutional because there was no relationship between the drug offenses and the United States. Additionally, Petitioner argues that neither Panama nor Honduras gave authorization for Petitioner to be brought to the United States and prosecuted. Petitioner also claims ineffective assistance of counsel in failing to: (1) preserve the jurisdictional issues; and (2) raise the issue on appeal when directed to do so by Petitioner.

The Government filed a response but failed to address both Petitioner's claim that the State Department's Certification included inaccurate information as well as the documents filed by Petitioner in support of his claim that the vessel was in territorial waters when interdicted. As such, the Court ordered the Government to file a supplemental response. In the meantime, Petitioner filed a reply brief reiterating his arguments.

The Government filed its supplemental response arguing that the State Department Certification accurately depicted where the go-fast vessel was interdicted and is supported by the trial record and a Coast Guard Situational Report. The Government concludes that Petitioner was aboard a stateless vehicle transporting cocaine in international waters and that Court properly exercised jurisdiction over Petitioner. The Government claims that Petitioner has failed to demonstrate ineffective assistance of counsel because his jurisdictional claims are meritless.

DISCUSSION

The MDLEA prohibits a person from knowingly or intentionally distributing, or possessing with the intent to distribute a controlled substance on board "a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1). This prohibition applies even though the act is committed outside the territorial jurisdiction of the United States. 46 U.S.C. § 70503(b). Notably, the MDLEA does not require a nexus between the drug trafficking and the United States. See 46 U.S.C. § 70502(c); United States v. Rendon, 354 F.3d 1320, 1324-25 (11th Cir. 2003), cert. denied, 541 U.S. 1035 (2004). Furthermore, the Eleventh Circuit has held that Congress did not exceed its authority under the Piracies and Felonies Clause by enacting the MDLEA without a connection to the United States. United States v. Estupinan, 453 F.3d 1336, 1338-39

(11th Cir. 2006).

Whether the vessel is a "vessel subject to the jurisdiction of the United States," within the meaning of 46 U.S.C. § 70502(c) is a preliminary question of law to be determined by the trial judge. 46 U.S.C. § 70504(a). A "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality..." 46 U.S.C. § 70502(c)(1)(A). A "vessel without nationality" includes:

> a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

Id. at § 70502(d)(1)(C).

The MDLEA provides that:

> (2) Response to claim of registry. The response of a foreign nation to a claim of registry under paragraph (1)(A) or (C) may be made by radio, telephone, or similar oral or electronic means, and is proved conclusively by certification of the Secretary of State or the Secretary's designee.

46 U.S.C. § 70502(d)(2). See United States v. Betancourth, 554 F.3d 1329, 1334 (11th Cir. 2009) ("under the Act, 'Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States ... *is proved conclusively by certification of the Secretary of State or the Secretary's designee*") Significantly, "[t]he legitimacy of a flag nation's

consent is therefore a question of international law that can be raised only by the foreign nation. <u>United States v. Bustos-Useche</u>, 273 F.3d 622, 626 (5th Cir. 2001).

Here, prior to the trial, the Government submitted a Certification for the Maritime Drug Law Enforcement Act Case Involving Go-Fast Vessel (Without Nationality) Federal Drug Identification Number (FDIN) - 2010377914. (Cr-D-82-1.) The Certification was executed by Commander Terrance Johns of the United States Coast Guard on March 9, 2010, and authenticated by the Secretary of State. According to the Certification, Petitioner and his co-defendants were aboard a 35-foot go-fast vessel in international waters, approximately 30 nautical miles northwest of Panama, on March 4, 2010. The vessel displayed no indicia of nationality (i.e., no registry numbers, a hailing port, nor was it flying a national flag). A United States Coast Guard law enforcement team conducted a right-of-visit boarding of the vessel to determine its nationality. All five persons on board the vessel claimed to be Honduran nationals. Furthermore, the master of the go-fast vessel, co-defendant Alberto Filimon Everitt Blanco, claimed that the vessel was of Honduran nationality.

In accordance with Article VI of the Implementing Agreement between the Government of the United States of America and the

Government of the Republic of Honduras Concerning Cooperation for the Suppression of Illicit Maritime Traffic in Narcotic Drugs and Psychotropic Substances, entered into force January 30, 2001, the Coast Guard inquired, via facsimile and email, with the Honduran Merchant Maritime Center, as to the whether go-fast vessel was registered in Honduras. The Honduran Merchant Maritime Center could neither confirm nor deny that the vessel was registered in Honduras and granted the Government of the U.S. authorization to board and search the vessel. The United States Coast Guard discovered 51 bales containing approximately 1,507 kilograms of cocaine on the vessel. At trial, this Court found that, "[T]he motion for presentence determination of jurisdiction by the Court is well supported. And based thereon that motion is granted for determination and the Court determines that it does have jurisdiction as set forth in the motion." (Cr-206, p.4.)

As previously indicated, Petitioner now contends that the Certification is inaccurate and that the vessel was within the territorial waters of Panama, approximately 11 miles from the coast, when it was interdicted. In support of his claims, Petitioner specifically relies on <u>United States v. Bellaizac-Hurtado</u>, 700 F.3d 1245, 1258 (11th Cir. 2012), in which the court found that the MDLEA, 46 U.S.C. §§ 70503(a) and 70506, were

6

unconstitutional as applied to the drug trafficking activities of the defendants in that case, which occurred in territorial waters of Panama. The Eleventh Circuit explained, "Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the **territorial water** of Panama." Id. (Emphasis added.) Notably, the court acknowledged that Congress has constitutional authority to prosecute drug trafficking conduct that takes place in international waters under the Felonies Clause. Id. at 1257 (collecting cases).

The Certification and other evidence presented by the Government demonstrate that Petitioner was on a vessel in international waters and, as such, Bellaizac-Hurtado is not applicable to his case. Petty Officer Nicholas Martinez, with the United States Coast Guard, testified at trial that when he first observed the go-fast vessel from a helicopter, the vessel was approximately 12 miles off the coast. (Cr-D-211, p. 43.) Maritime Officer First Class Javiar Rojas, who was on the USS Freedom, specifically testified that the go-fast vessel was out "in international waters. They did come out of Panamanian waters. It was observed that they came out of Panama going - when we observed them, they were in international waters." (Id. at p. 53.) Officer Rojas also testified that the go-fast vessel had no flag, no indication or nationality, and no markings on the vessel. (Id. at

7

p. 60.) He explained that after eventually stopping the go-fast vessel, removing Petitioner, his co-defendants, and the cocaine, the LEDET team marked the position of the go-fast vessel and left it adrift. (Id. at p. 87.)

The Situational Report the Government submitted with its supplemental response supports the foregoing testimony as well as the Certification. The Report indicates the coordinates where the go-fast vessel was originally visually detected 09°48'24"N, 79°27'54"W (9 degrees, 48 minutes, and 24 seconds north of the equator and 79 degrees, 27 minutes, and 54 seconds west of the meridian passing through Greenwich, England), approximately 12 nautical miles north of Punta Grande, Panama, and that the United States Coast Guard "delayed setting an intercept course" to allot the go-fast vessel to increase its distance from the Panamanian territorial seas. (Cv-D-11-1, Exh. A, p. 3.) Eventually, the Coast Guard intercepted the go-fast vessel which went dead in the water at 09°57'48"N, 079°59'09"W. Right of approach questioning was conducted and, after receiving authorization to board and search the go-fast vehicle, the LEDET team boarded and performed tests confirming the contraband was cocaine. The LEDET team then received authorization to seize the contraband and the defendants and transported them to the USS Freedom. When the LEDET team

8

finally parted with the go-fast vessel, it was in position 09°40'N, 79°55'03"W. (Id. at p.3, 4.) According to Google Maps, the location where the go-fast vessel was originally stopped and went dead in the water as well as the location where it was finally left afloat by the LEDET team are more than 20 nautical miles from the coast of Panama. See www.maps.google.com (Aug. 15, 2013).

While Petitioner argues that there is no evidence Honduras authorized Petitioner to be brought to the United States to be prosecuted, the Certification establishes that the Government of Honduras could not and did not affirmatively and unequivocally assert that the vessel was of Honduran nationality. (Cr-D-82-1, p.3) As such, the go-fast vessel was a stateless vessel in international waters and, thus ,subject to the jurisdiction of the United States. See 46 U.S.C. §§ 70503(a)(1), 70502(d)(1)(C)

Finally, Petitioner is not entitled to relief as to his claims of ineffective assistance of counsel in failing to challenge subject matter jurisdiction prior to and during trial and on appeal. An attorney is not ineffective in failing to raise a meritless claim. See Freeman v. Attorney General, State of Florida, 536 F.3d 1225 (11th Cir. 2008) (citing Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001). Counsel cannot be labeled ineffective for failing to raise issues which have no merit. See Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir.1987)

9

(evaluating likelihood of success on claim in assessing deficiency of counsel).

It is therefore ORDERED that:

1) Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cv-D-1; Cr-D-324) is DENIED.

2) The Clerk is directed to enter judgment in favor of the Government and CLOSE the civil case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'"

Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this 15th day of August, 2013.

_____
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE